M. T. PRATER, RESPONDENT, v. W. L. RUSH AND R. H. HIGGINS, FORMERLY PARTNERS UNDER THE FIRM NAME OF THE INDEPENDENT LIVE STOCK COMMISSION COMPANY, APPELLANTS.—74 S. W. (2d) 877.

Springfield Court of Appeals. August 24, 1934.

Rehearing Denied October 3, 1934.

*Neale, Newman & Turner* for appellant.

*Williams & Stone* and *R. Jasper Smith* for respondents.

ALLEN, P. J.—This case was tried in the Circuit Court of Greene County, on July 15, 1933. The petition in substance is as follows:

On April 28, 1931, the defendants, Rush and Higgins, were co-partners engaged in the live stock commission business at the Union Stockyards at Springfield, Missouri.

That on said 28th of April, 1931, plaintiff entered into a written contract with defendants whereby defendants employed him for a period of one year beginning May 1, 1931, and ending April 30, 1932, at a salary of THIRTY ($30.00) DOLLARS per week, which contract in substance appears in the findings of fact made by the court.

That plaintiff entered upon his employment under said contract as provided, and so continued until the 3rd day of October, 1931, when defendants wrongfully discharged him and refused to permit him to render further services under said contract.

That plaintiff was paid his salary from the 1st day of May, 1931, to the 3rd day of October, 1931, in the sum of SIX HUNDRED SIX-TY-FIVE ($665.00) DOLLARS, but that he received no salary thereafter.

That after plaintiff was discharged he endeavored to find other employment but was unable to do so until the 7th day of March, 1932, when he obtained employment with the Springfield Livestock Com-

mission Company and earned about ONE HUNDRED ($100.00) DOL-LARS. That by reason of the breach of said contract by defendants, plaintiff asked judgment in the sum of EIGHT HUNDRED FIF-TEEN ($815.00) DOLLARS with interest from May 1, 1932, at six per cent per annum.

The defendants' answer alleged that their partnership was dissolved on about the 6th day of August, 1931, and thereafter entirely ceased to exist, and that by reason thereof the contract mentioned in plaintiff's petition became null and void on said August 6, 1931, and further that plaintiff became ill in May or June, 1931, by reason of which he lost two or three weeks' time after which he resumed work, but was unable to discharge the duties required of him by the terms of his contract, and was therefore discharged on about October 3, 1931.

A jury was waived and the cause submitted to the court, which rendered judgment in favor of the plaintiff in the sum of EIGHT HUNDRED SEVENTY-FOUR and no/100 ($874.00) DOLLARS, from which judgment defendant has appealed to this court. For convenience and clarity we first quote the findings of fact by the trial court:

"The court finds the facts to be that on and after the 28th day of April, 1931, the defendants, W. L. Rush and R. H. Higgins, partners, were engaged in the business of selling live stock on commission, under the name of the Independent Live Stock Commission Company; that on the 28th day of April, 1931, the defendants made a contract with the plaintiff, M. T. Prater, which is as follows:

"The Independent Livestock Commission Company agrees to employ M. T. Prater for a period of one year beginning May first, 1931, and ending April 30, 1932, at a salary of $30 per week to be paid weekly; M. T. Prater agrees to give his entire time to the Independent Livestock Commission Company and to do such work as is in line and usually done by an employee of this company.

"In case that M. T. Prater is ill or hindered from attending to active services he forfeits his salary for that time.

"In case of the Independent Livestock Commission Company, being put out of business on account of fire or death of the owners, or in case of the present owners selling out or the discontinuance of this Independent Livestock Commission Company, then this contract shall be null and void.

"Independent Livestock Comm. Co.,
"Parties of the First Part (Signed) R. H. HIGGINS,
"(Signed) W. L. RUSH.
"Party of the second part (Signed) M. T. PRATER."

"That plaintiff went to work under said contract on the first day of May, 1931, and continued until the 6th day of August, 1931. He

was paid the salary stipulated in the contract during that period. That on the said 6th day of August, 1931, Rush and Higgins entered into the following contract:

" 'This contract made and entered into by and between Ralph H. Higgins, party of the first part and W. L. Rush, party of the second part, this the 6th day of August, 1931.

" 'WHEREAS: Party of the second part purchases from party of the first part his interest in the Independent Livestock Commission Company for the consideration of Fifteen Hundred ($1500.00) Dollars, W. L. Rush to assume all accounts and receive all accounts payable; R. H. Higgins to retain the one membership which is registered in his own name. Payment of Fifteen Hundred ($1500.00) to be made on August 15th, when the books of the Independent Livestock Commission Company are closed, Mr. Higgins to receive his proportional part of the profits up to and including August 15th, 1931. Mr. Higgins assumes contract with M. T. Prater from August 15th, 1931, until expiration of said contract. W. L. Rush to assume the contract with Chas. Fesperman and H. P. Pumphrey from August 15th until the expiration of their respective contracts.

" 'WITNESSETH: Our hands and signatures this the 6th day of August, 1931.

" '(Signed) R. H. HIGGINS,
" 'Party of First Part.
" '(Signed) W. L. RUSH,
" 'Party of Second Part.'

"That thereafter, the plaintiff claimed to have continued in the employ of defendant until the 3rd day of October, 1931, and during that period the defendant, Higgins, paid the plaintiff the salary stipulated in the original contracts, to-wit $30 per week.

"That on the 3rd day of October, 1931 the defendant, Higgins, dismissed plaintiff, giving as a reason therefor that the condition of business would not justify keeping him. That thereafter, the plaintiff reported for work for several days and offered his services but they were refused by the defendant, Higgins; that defendant Higgins has consistently refused to employ the plaintiff since the 3rd day of October, 1931; that the plaintiff found some other employment of which he earned during the period from October 3, 1931 to April 30, 1932, $100.

"The court further finds that services rendered by the plaintiff during the time he was in the employ of the partnership, and during the time he was in the employ of the defendant, Higgins, were of such a nature as to substantially fulfill the obligations on his part. Although he was ill for a brief time his services were not so intermittent or so unsatisfactory as to justify his dismissal on that ground."

The foregoing finding of facts was made by the trial court upon

the oral testimony of the parties to the cause, together with the two written contracts, denominated "Exhibits One and Two," the first of which was between the parties to this cause and the second between the two appellants.

The oral testimony was in substance, as follows:

Respondent worked until August 6th, after which he worked under the direction of Higgins, selling hogs and doing anything he was asked, until October 3, 1931. On August 6th, when he started to work, under the direction of Higgins, both Rush and Higgins talked to him about the matter. Nothing was said about a new contract. He told them that his contract called for him to do whatever they or either of them wanted him to do. A few days before October 3rd, Higgins asked him to quit. He told Higgins he could not afford to quit. Nothing more was said for a few days, when Higgins told him he would have to quit, but gave no reason, except that business was bad. After October 3rd, respondent reported for work each morning for a week. Higgins told him he could not use him and never put him back to work; that he looked for a job but was only employed for a short time during the remainder of the year, making about a hundred dollars during the time. He never saw appellants' last contract until about the time the partnership was dissolved; he did not know anything about their deal; he said to both appellants: "I am working for both of you. I have got this contract and whatever you say for me to do I will do," and that they said for him to work for Higgins; that Rush and Higgins were both present.

Rush, for respondent, testified that after August 6, 1931, he employed Fesperman and Pumphrey, who were mentioned in the contract between himself and Higgins and paid them to the expiration of their contracts with the firm.

It will be observed that Rush as second party in the last contract, purported to purchase Higgins' interest in the Independent Livestock Commission Company, and to assume all accounts including the contracts of employment of Fesperman and Pumphrey, while Higgins assumed the contract with Prater, from that date until the expiration thereof.

It is urged by respondent, and we think correctly, that if ambiguity exists in the meaning of the terms of a contract, the construction given by the parties themselves, must control and that under such circumstances the courts look for that information to the interpretation placed on the instrument by the parties themselves.

In the case of Wentzel v. Lake Lotawana Development Company, 48 S. W. (2d) l. c. 195, the court observes that: "Where, as here, the parties themselves have put a construction upon the provisions of a contract, the court will accept the construction, unless contrary to the obvious intendment of the contract." Citing in support thereof

St. Louis Gaslight Co. v. City of St. Louis, 46 Mo. 121, 128, in which it is said that "If the court gives an interpretation differing from that understood by the parties, it in effect makes a new agreement, the very thing most to be avoided. If it leaves the parties to be governed by their own understanding of their own language, it in effect enforces the contract as actually made." From the terms of the second contract, made between the two appellants, by which Rush assumed the contracts of employment, with Fesperman and Pumphrey and Higgins assumed the contract with respondent, Prater, it is clear that appellants construed the contract with respondent and also their contract with Fesperman and Pumphrey as not affected by the sale of Higgins' interest to Rush, which construction is approved in the case of Union Depot Co. v. Railway Co., 131 Mo. 1. c. 305, 31 S. W. 908, in which the court quotes with approval, the doctrine that "The business of a court and jury is to ascertain the meaning and intention of the parties in making an agreement, and to carry into effect, if consistent with law. I know of no better mode of ascertaining this meaning than is shown if all parties acted on a particular meaning," which doctrine is approved in the case of Joplin v. Wheeler, 173 Mo. App. 1. c. 608, 158 S. W. 924, in which the court said:

"We see no reason why we should not apply the familiar rule that the courts will adopt that construction of the contract which the parties themselves by their acts and conduct have placed upon it."

Respondent not being a party to, or having any knowledge of, the provisions of the contract between appellants, until long after its execution, is unquestionably entitled to the benefit of appellants' own construction, in respondent's favor and against appellants' interest, which construction, so adopted by appellants in their separate contract with each other, is conclusive upon them as to the meaning of the appellants' contract, with respondent. Since the terms of a contract and the object and meaning of its provisions may be known by its express language, it is therefore equally true that any ambiguity occurring in the contract may be made plain and clear by the use of language in a collateral contract, upon the same subject matter.

The question of the purchase by Rush, of Higgins' interest in the firm does not, in our opinion, control the question of their joint liability to respondent, since by the language in the contract of purchase by Rush, from Higgins, recognizes the mutual and joint liability of appellants to Prater and his co-employees.

The agreement of Rush to pay Fesperman and Pumphrey, to the expiration of their contract, while Higgins agrees to pay Prater until the expiration of his contract, does not in law, separate their joint liability, except for the convenience of appellants; and cannot be defined as meaning other than that by their own understanding and

intention they were both bound by their joint contract, as stated in the original contract of employment of respondent.

Therefore, we are not only in accord with, but also bound by the statement of the principle enunciated in the Union Depot and Joplin v. Wheeler cases, supra, that it is the court's business and duty in cases such as the one at bar to ascertain the real meaning of the contract and intention of the parties thereto and especially of the appellants in making the contract in issue. When we find that meaning it is our duty to carry it into effect, if consistent with the law. There certainly can be no better mode of ascertaining that meaning than is shown by their acts or attitude on the particular subject.

This court, through Judge STURGIS, in the Joplin case, supra, could find "no reason why in such cases, we should not apply the familiar rule of law that the courts will adopt that construction of the contract, which the parties themselves by their acts and conduct have placed upon it," nor can we.

The finding of the trial court was: "That services rendered by the plaintiff during the time he was in the employ of the partnership and during the time he was in the employ of the defendant, Higgins, were of such a nature as to substantially fulfill the obligations on his part."

Therefore, for the reasons aforesaid, the judgment of the Circuit Court is hereby affirmed. *Bailey* and *Smith, JJ.*, concur.