**Frank G. FENIX, Plaintiff,**

v.

**Anthony J. CELEBREZZE, Secretary of Health, Education, and Welfare, Defendant.**

**Civ. A. No. 1750.**

United States District Court
W. D. Missouri,
Southwestern Division.

June 22, 1965.

Robert E. Seiler, of Seiler, Blanchard & VanFleet, Joplin, Mo., for plaintiff.

F. Russell Millin, U. S. Atty., by John Harry Wiggins, Asst. U. S. Atty., Kansas City, Mo., for defendant.

BECKER, District Judge.

This is an action under the Social Security Act to review a final decision of the Secretary of Health, Education, and Welfare denying to plaintiff old-age insurance benefits provided by Section 402(a) of Title 42, U.S.C.A., and re-

quiring the repayment by plaintiff and his wife of benefits previously received by them. Jurisdiction exists under Section 405(g) of Title 42, U.S.C.A. Unless otherwise designated, all statutes cited hereinafter are contained in Title 42, U.S.C.A.

### STATUTES INVOLVED

Section 402(a) requires that plaintiff be a "fully insured individual" to qualify for old-age insurance benefits. Section 414(a) defines the term "fully insured individual". This definition, applied to the plaintiff, requires that the plaintiff have a minimum of six quarters of coverage in order that he be a fully insured individual.

Section 413(a) (1) provides:

"The term 'quarter' * * * means a period of three calendar months ending on March 31, June 30, September 30, or December 31."

Section 413(a) (2) provides:

"The term 'quarter of coverage' means a quarter in which the individual has been paid $50 or more in wages * * * or for which he has been credited (as determined under section 412 of this title) with $100 or more of self-employment income, * * *."

The term "self-employment income" as used in Section 413(a) (2) means income from a trade or business carried on by an individual, and does not include investment or rental income. Section 411(a) and (b).

Section 412 requires self-employment income of plaintiff in a taxable calendar year to be credited equally to each quarter of that year.

Section 409 defines the term "wages" used in Section 413(a) (2) as " * * * remuneration * * * for employment * * *."

Prior to 1961, services performed by an individual in the employ of his son (or other relatives not material here) were excluded from the definition of employment by Section 410(a) (3), so remuneration for such services did not

constitute wages under Section 413(a) (2). This exclusion is sometimes designated as the family employment exclusion.

### PRINCIPAL ISSUE IN DISPUTE

The principal disputed issue in the decision under review is what portion, if any, of plaintiff's employment from January 1, 1955, to September 30, 1956, was family employment.

### PRIOR ADMINISTRATIVE PROCEEDINGS

On September 7, 1956, plaintiff, then 69 years old, applied for old-age insurance benefits. The Bureau of Old-Age and Survivors Insurance of the Social Security Administration ("Bureau" hereinafter) determined that plaintiff was entitled to benefits of $104.50 a month.

On January 21, 1957, plaintiff's wife applied for wife's insurance benefits under Section 402(b), which provides that the wife of a fully insured individual is entitled to benefits at age 65. The Bureau determined that she was entitled to benefits of $52.30 a month as of November 1956, the month in which she became 65 years old.

Benefits were paid to plaintiff for the months of October 1956 to May 1959, inclusive, in the total sum of $3,381.50. Benefits were paid to plaintiff's wife for the months of November 1956 to May 1959, inclusive, in the total sum of $1,-639.80.

The Bureau's determinations that plaintiff and his wife were entitled to benefits were based on a finding that plaintiff's employment from January 1, 1955, to September 30, 1956, was by the St. Regis Mining Company, a Missouri partnership, of which plaintiff's son, Gilbert (also known as G. J.) Fenix, and Russell Prigg ("Prigg" hereinafter), unrelated to plaintiff, were the only copartners.

Later the Bureau found that the St. Regis Mining Company was owned solely by plaintiff's son after February 7, 1955. Based on this finding it was concluded by the Bureau that after Febru-

ary 7, 1955, plaintiff's employment was family employment. Under this later finding and conclusion, plaintiff would not have the required six quarters of coverage. So the payment of benefits to plaintiff and his wife was terminated by the Bureau.

Plaintiff and his wife made further applications for benefits on July 31, 1959. These applications were based on alleged self-employment income of the plaintiff during the years 1957 and 1958. The Bureau denied plaintiff and his wife benefits on these applications on the finding that plaintiff's income in 1957 and 1958 was investment and rental income, not derived from a trade or business carried on by plaintiff.

The Bureau then reconsidered and affirmed the denials of benefits to plaintiff and his wife on all prior applications. Thereupon plaintiff requested a *de novo* hearing. After plaintiff's request for a hearing, the Bureau directed plaintiff and his wife to repay the total of $5,021.30 in benefits received by them.

A *de novo* hearing was held, following which the Hearing Examiner rendered his decision denying benefits. The Appeals Council denied plaintiff's request for review. So the findings, conclusions, and decision of the Hearing Examiner constitute the final decision of the defendant subject to review in this action.

## EVIDENCE BEFORE THE HEARING EXAMINER

Plaintiff's son, Gilbert Fenix, testified that he has been in mining or related businesses since he graduated from high school; and that on July 11, 1950, he obtained a ten year lease on lead and zinc mining property near Joplin, Missouri, known as the St. Regis Mine.

Gilbert Fenix and Prigg both testified that in 1950 they entered into an oral partnership agreement to operate the St. Regis Mine and certain other leased mining properties with 75 percent and 25 percent as their respective interests; and that they did business as the St. Regis Mining Company.

Gilbert Fenix further testified that the St. Regis Mine flourished during the Korean conflict and was very profitable; that ore prices dropped after the Korean conflict and mining operations of the St. Regis Mining Company were closed; and that a watchman was hired to look after the mining properties after the closing.

Plaintiff testified that he has been in some phase of mining all of his working life; that he knew the St. Regis Mining Company was a partnership between Gilbert Fenix and Prigg; that he was hired as caretaker of the mining properties of the St. Regis Mining Company by Gilbert Fenix; that his employment as caretaker began on January 1, 1955, and continued until September 30, 1956; that his salary was $350 a month before tax deductions; and that his first salary check, received February 1, 1955, was in the amount of $300.40 after tax deductions.

On February 7, 1955, a bill of sale was executed by Prigg, the material portions of which are quoted below:

"* * * RUSSELL H. PRIGG * * * party of the First Part, for and in consideration of the sum of Five Thousand Two Hundred and no/100————($5,200.00) DOLLARS to him in hand paid * * * by G. J. FENIX party of the Second Part, the receipt whereof is hereby acknowledged, having granted, bargained, sold and delivered, and by these presents do grant, bargain, sell and deliver unto the said G. J. FENIX his executors, administrators and assigns, the following described personal property, to wit: All of my right, title and interest in the partnership between myself and the said G. J. Fenix, known as St. Regis Mines, and all of the property and assets of said partnership, including, but not limited to, land, buildings, equipment, trucks, pumps, supplies, cash, notes, accounts receivable, claims and choses in action.

"Said consideration of $5200.00 has been paid in the following man-

ner: $2,000.00 in cash, receipt of which is hereby acknowledged; and endorsement of credit in the sum of $3200.00 on the note heretofore executed by first party to Frank G. Fenix, which note is now held by second party.

"It is understood that in the event party of the Second Part, shall, within five (5) years from the date hereof, elect to conduct mining operations on the Bullfrog property, or on the St. Regis property, or on lands heretofore leased from American Zinc, Lead & Smelting Company adjoining said Bullfrog property, party of the First Part shall have the right to share in any such mining operations to the extent of a one-fourth interest therein by paying one-fourth of the costs and expenses thereof, including a like part of the costs and expenses of dewatering and preparing for such mining."

Prigg, Gilbert Fenix, and Paul E. Bradley, the partnership attorney who prepared the bill of sale, stated that the bill of sale was not intended to dissolve the partnership and that the final quoted paragraph thereof was added at Prigg's insistence to remove any doubt about the continuation of the partnership. The purposes of the bill of sale, as expressed by the testimony of Prigg and Gilbert Fenix, were (1) to provide Gilbert Fenix sole ownership of the mining equipment, for which he had a use in another business venture, and (2) to provide Prigg money, for which, at that time, he had a pressing need. Mr. Bradley stated that articles of dissolution, instead of a bill of sale, would have been prepared if Gilbert Fenix and Prigg had wished to end their partnership.

No timely partnership tax returns were filed by the St. Regis Mining Company after 1953. Partnership returns for the years 1954 to 1958, inclusive, were filed in 1960. These returns allocated profits and losses of St. Regis Mining Company according to Gilbert Fenix's and Prigg's respective interests in the partnership. However, Gilbert Fenix testified that during those years he claimed the profits and losses and deducted all of plaintiff's salary from his gross income as an ordinary business expense on his personal income tax returns.

Prigg testified that he made no inquiries about the St. Regis Mining Company after the bill of sale was executed, other than during informal meetings with Gilbert Fenix at which the possibility of a federal government subsidy for the mining of lead and zinc ore was discussed; and that without government action the price of lead and zinc would not rise to the point that would permit profitable mining by the St. Regis Mining Company.

Plaintiff testified further that he was orally informed of the February 7, 1955, transaction by Gilbert Fenix, and was told that it was a sale of equipment; that his duties did not change after February 7, 1955, nor did the manner in which he was paid (St. Regis Mining Company checks signed by Gilbert Fenix); that he discussed his working conditions with Prigg in February or March of 1955 while they repaired the top of a mine shaft; and that he observed nothing during the term of his employment to cause him to believe Prigg had relinquished all his interest in the St. Regis Mining Company.

In connection with the last item above, Section 358.350, R.S.Mo., V.A.M.S., provides for constructive notice of the dissolution of a partnership by publication. The record in this cause does not reflect that any such publication was made.

Plaintiff's testimony that he believed Prigg was still a partner as late as September 1956 is inconsistent with plaintiff's application for benefits dated September 7, 1956, which contains the following statement:

"I will retire 9/30/56. My son Gilbert J. Fenix and [blank] Sisson own the St. Regis. Mr. Sisson is no relation to me. I do not know if it is a partnership or corporation."

Evidence relating to the issue of plaintiff's self-employment income will not be discussed. The findings and conclusions of the Hearing Examiner on that issue are not challenged by either party in this action.

## DECISION OF THE HEARING EXAMINER

The Hearing Examiner found that plaintiff was not and is not entitled to old-age insurance benefits, and that the repayment required by the Bureau could not be waived. The following are excerpts from his decision:

" * * * the Hearing Examiner is of the opinion that the partnership between Gilbert Fenix and Russell Prigg terminated in February 1955. The Hearing Examiner finds that the claimant was in the employ of his son, Gilbert Fenix, in and after February 1955 and that earnings from such employment were excluded from quarters of coverage for Social Security purposes. The Hearing Examiner, therefore, finds that the claimant had earnings from wages of $300.40 from the St. Regis Mining Company, as determined by the Bureau, that resulted in one quarter of coverage, the quarter ending March 31, 1955. It necessarily follows that claimant received overpayments of benefits from October 1956 to May 1959 in the amount of $3,381.50 and the claimant's wife was overpaid benefits from November 1956 to May 1959, $1,639.80, or they received a combined overpayment of $5,021.30.

"Though a waiver of the overpayments was not requested the Hearing Examiner has considered that question. Section 204(b) of the Social Security Act provides: 'There shall be no adjustment or recovery by the United States in any case where incorrect payment has been made to an individual who is without fault * * * and where adjustment or recovery would defeat the purpose of this title or be against equity and good conscience.'

"Assuming that the claimant here was without fault in the receipt and acceptance of the overpayment, which has not been shown by the evidence, the Hearing Examiner is convinced that the claimant had sufficient resources that an adjustment or recovery of the overpayment would not defeat the purpose of title II of the Act or be against equity and good conscience, and the Hearing Examiner so finds.

\* \* \* \* \* \*

" * * * It appears from the record that the claimant did have an income from a trade or business of selling used mining equipment in 1957. His self-employment income for that year was $4,548.16 and the Hearing Examiner so finds.

" * * * The Hearing Examiner, therefore, finds that the amount of self-employment income claimed in 1958 was in truth and in fact income from an investment for which the claimant received a profit. The Hearing Examiner further finds that the claimant did not acquire any quarters of coverage during 1958.

\* \* \* \* \* \*

"From the record the Hearing Examiner has determined and finds that the claimant acquired one quarter of coverage from wages received in the first quarter of 1955 and four quarters of coverage in 1957 as a result of a self-employment income in the business of selling mining equipment during that year, or a total of five quarters of coverage. A minimum of six quarters is necessary for the claimant to be entitled to Social Security Benefits."

## SCOPE OF JUDICIAL REVIEW

Judicial review of the administrative decision in this cause is limited to a review of the record to determine whether the findings of fact are supported by substantial evidence, Celebrezze

v. Bolas (C.A. 8), 316 F.2d 498, and whether correct legal standards were applied to the facts properly found. Williams v. Ribicoff (C.A. 5), 323 F.2d 231.

## OPINION

■■ At the outset it should be noted that plaintiff has the burden of proving that he is entitled to benefits. Celebrezze v. Bolas, supra; Carqueville v. Flemming (C.A. 7), 263 F.2d 875. It follows that in this cause plaintiff has the burden of proving that his contract of employment was with a partnership.

■ The Hearing Examiner correctly found that under the Uniform Partnership Act, effective in Missouri since 1949, the dissolution of the partnership in question depended on the intent of the partners. The Hearing Examiner's decision relied on 40 Am.Jur. Partnership § 244, a portion of which is quoted below:

"By operation of law, a sale or assignment by one partner of his interest in the partnership to a third person constitutes ipso facto a dissolution of the partnership, notwithstanding a stipulation in the articles of partnership that the firm shall continue for a specified time. There is also authority for the view that assignment of the interest of one partner to his copartner is ipso facto a dissolution of the firm. In the latter case, however, much necessarily depends upon the contract of transfer, and it is frequently said that a sale of partnership effects by one partner to another is simply evidence tending to show a dissolution and is not ipso facto a dissolution; the rule may be said to be that the assignment by a partner of his interest in the partnership property to his copartner does not have the effect of dissolving the firm unless the terms of the transfer show that the parties contemplated and intended the entire withdrawal of the selling partner from the firm, and the termination of his duties, lia-

bilities, and authority as a partner between themselves. In other words, the effect to be given such sale or assignment is primarily a question of intention." (Footnotes omitted.)

There is substantial evidence to support the Hearing Examiner's finding that *between the partners* the partnership was dissolved on February 7, 1955. However, the Hearing Examiner did not consider the question of notice of the dissolution to plaintiff. In 40 Am.Jur. Partnership § 258, it is stated:

"Since a dissolution of partnership does not become effectual as to third persons until the publication [or actual notice], the date of the dissolution as to them is the time of the publication [or actual notice]."

In 40 Am.Jur. Partnership § 264 it is stated:

"While it is often said that the dissolution of a partnership terminates its existence, it is perhaps more accurate to say that dissolution denotes that change in the partnership relation which ultimately culminates in its termination. It is true that except for the purpose of winding up the business of the firm, a partnership ceases to exist immediately upon dissolution; yet it is hardly necessary to cite authorities for the proposition that after dissolution a partnership is considered as maintaining a limited existence for the purpose of making good all outstanding engagements, * * *. This principle is recognized in the Uniform Partnership Act." (Footnotes omitted.)

In 40 Am.Jur. Partnership § 266, it is stated:

"Under statute [Uniform Partnership Act] in many jurisdictions, and as a general rule, the dissolution of a partnership does not relieve the partners from their liability for the performance of contracts theretofore made. The right of third persons to enforce obligations and con-

tracts binding on a firm at the time of its dissolution usually continues after termination of the partnership, as it does upon the withdrawal of one partner and assumption of liabilities by the continuing partner or partners." (Footnotes omitted.)

In 68 C.J.S. Partnership § 352, it is stated:

"The dissolution of a firm does not relieve any of its members from liability for existing obligations, including liability on an existing contract." (Footnotes omitted.)

The Missouri Statute Section 358.300, V. A.M.S., reads as follows:

"358.300. Partnership not terminated by dissolution

"On dissolution the partnership is not terminated but continues until the winding up of partnership affairs is completed."

■ Plaintiff's employment by the partnership on January 1, 1955, was for an indefinite duration. Contracts of employment for an indefinite duration may be terminated at the will of either party (subject to decisional, contractual or statutory notice provisions.) Paisley v. Lucas, 346 Mo. 827, 143 S.W.2d 262; Maxey v. General Electric Company, Mo. App., 382 S.W.2d 67.

■ Because plaintiff was employed by the partnership, he continued to be employed by the partnership until he received actual or constructive notice of the dissolution. The dissolution of a partnership does not abrogate existing contracts to which the partnership is a party. Armstrong v. Henley, 182 Mo. App. 320, 170 S.W. 402; Prater v. Rush, 228 Mo.App. 922, 74 S.W.2d 875. Liability on partnership contracts terminable by notice of dissolution continues until such notice is given. Cf., Truck Leasing Corp. v. Swope, Mo.App., 248 S.W.2d 84.

■ One employed for an indefinite duration by an existing partnership, later dissolved, can hold all the former partners liable for services rendered prior to actual or constructive notice of the dissolution. Egholm v. Williams, 81 Wash. 609, 143 P. 152.

■ The Hearing Examiner applied appropriate legal standards in determining the dissolution of the partnership between the partners, but these standards are inappropriate to determine the termination of the partnership between the partnership and an employee without notice, which is the crucial issue in this cause. Because of this application of an erroneous legal standard, findings of fact on the issue of notice necessary to the disposition of this cause were not made. Therefore the decision of the defendant should be reversed and the cause remanded for a rehearing. See Frith v. Celebrezze (C.A. 5), 333 F.2d 557, 560, where it is stated:

"We have not undertaken discussion of the evidence with any view in mind of remaking factual choices. For as we said in Page v. Celebrezze, 5 Cir., 1963, 311 F.2d 757, 759, 'our function is a limited one.' The statute says that '[t]he findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive * * *,' 42 U.S.C.A. § 405(g), and we are bound by that standard. However, we have indicated before that in view of the deliberate congressional judgment to afford this significant insulation to the administrative fact findings, a judgment that we in no way undermine or question, it becomes extremely important that the administrative trier of fact (1) apply the correct legal standards for evaluation and (2) make findings which resolve the crucial issues. Hayes v. Celebrezze, 5 Cir., 1963, 311 F.2d 648; Page v. Celebrezze, 5 Cir., 1963, 311 F.2d 757."

The remand of this cause makes it unnecessary at this time to review the conclusion of the Hearing Examiner that plaintiff and his wife must repay to defendant the $5,021.30 in benefits received by them.

It is therefore

Ordered that defendant's motion for summary judgment be, and it is hereby, denied. It is further

Ordered and adjudged that the decision of the defendant be, and it is hereby, reversed. It is further

Ordered and adjudged that this cause be, and it is hereby, remanded to the defendant for a rehearing not inconsistent with this opinion and judgment.