**Frank G. FENIX and Jessie P. Fenix, Plaintiffs,**

**v.**

**Anthony J. CELEBREZZE, Secretary of Health, Education, and Welfare, Defendant.**

**Civ. A. No. 1750.**

United States District Court
W. D. Missouri,
Southwestern Division.

Aug. 8, 1968.

Blanchard & Van Fleet, by Robert E. Seiler, Joplin, Mo., for plaintiffs.

Calvin K. Hamilton, U. S. Atty., by Anthony P. Nugent, Jr., Kansas City, Mo., for defendant.

## MEMORANDUM OPINION DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND REVERSING DECISION OF DEFENDANT

BECKER, Chief Judge.

This is the second civil action under the Social Security Act to review a final decision of the Secretary of Health, Education, and Welfare denying to plaintiff old-age insurance benefits provided by Section 402(a) of Title 42, U.S.C., and requiring the repayment by plaintiff and his wife of benefits previously received by them under Sections 402(a) and 402(b), Title 42, U.S.C. The decision in the first action remanding the case to the Secretary is reported in 243 F.Supp. 816.

Unless otherwise designated, all statutes cited hereinafter are contained in Title 42, U.S.C.

Jurisdiction exists under Section 405(g).

### Statutes Involved

Section 402(a) requires that an individual be a "fully insured individual" to qualify for old-age insurance benefits. Section 414(a) defines the term "fully insured individual". This definition, applied to the plaintiff, requires that the plaintiff have a minimum of six quarters of coverage in order that he be a fully insured individual.

Section 413(a) (1) provides:

"The term 'quarter' * * * means a period of three calendar months ending on March 31, June 30, September 30, or December 31."

Section 413(a) (2) provides:

"The term 'quarter of coverage' means a quarter in which the individual has been paid $50 or more in wages * * * or for which he has been credited (as determined under section 412 of this title) with $100 or more of self-employment income, * * * *."

The term "self-employment income" as used in Section 413(a) (2) means income from a trade or business carried on by an individual, and does not include investment or rental income. Section 411(a) and (b).

Section 412 requires self-employment income of plaintiff in a taxable calendar year to be credited equally to each quarter of that year.

Section 409 defines the term "wages" used in Section 413(a) (2) as "* * * remuneration * * * for employment * * * *."

Prior to 1961, services performed by an individual in the employ of his son (or other relatives not material here) were excluded from the definition of employment by Section 410(a) (3), so remuneration for such services did not constitute wages under Section 413(a) (2). This exclusion is sometimes desig-

nated as the "family employment" exclusion.

## Question Presented

The question presented in this case (as in the earlier review action) is whether any employment of plaintiff from January 1, 1955, to September 30, 1956, was employment by plaintiff's son, as distinguished by employment by a Missouri co-partnership, St. Regis Mining Co., of which plaintiff's son was a partner.

The co-partners in the partnership were plaintiff's son, Gilbert Fenix and Russell Prigg, who was not related to plaintiff. Therefore, employment by the co-partnership was not family employment within the meaning of Section 413(a) (2).

## Prior Administrative Proceedings

On September 7, 1956, plaintiff, then 69 years old, applied for old-age insurance benefits. The Bureau of Old-Age and Survivors Insurance of the Social Security Administration ("Bureau" hereinafter) determined that plaintiff was entitled to benefits of $104.50 a month.

On January 21, 1957, plaintiff's wife applied for wife's insurance benefits under Section 402(b), which provides that the wife of a fully insured individual is entitled to benefits at age 65. The Bureau determined that she was entitled to benefits of $52.30 a month as of November 1956, the month in which she became 65 years old.

Benefits were paid to plaintiff for the months of October 1956 to May 1959, inclusive, in the total sum of $3,381.50. Benefits were paid to plaintiff's wife for the months of November 1956 to May 1959, inclusive, in the total sum of $1,639.80.

The Bureau's determination that plaintiff and his wife were entitled to benefits was based on a finding that plaintiff's employment from January 1, 1955, to September 30, 1956, was by the St. Regis Mining Company, a Missouri partnership, of which plaintiff's son, Gilbert (also known as G. J.) Fenix, and Russell Prigg ("Prigg" hereinafter), unrelated to plaintiff, were the only co-partners.

Later the Bureau found that the St. Regis Mining Company was owned solely by plaintiff's son after February 7, 1955. Based on this finding it was concluded by the Bureau that after February 7, 1955, plaintiff's employment was family employment. Under this later finding and conclusion, plaintiff would not have the required six quarters of coverage. So the payment of benefits to plaintiff and his wife was terminated by the Bureau.

Plaintiff and his wife made further applications for benefits on July 31, 1959. These applications were based on alleged self-employment income of the plaintiff during the years 1957 and 1958. The Bureau denied plaintiff and his wife benefits on these applications on the finding that plaintiff's income in 1957 and 1958 was investment and rental income, not derived from a trade or business carried on by plaintiff.

The Bureau then reconsidered and affirmed the denials of benefits to plaintiff and his wife on all prior applications. Thereupon, plaintiff requested a de novo hearing. On January 18, 1961, a de novo hearing was held in this cause in Joplin, Missouri. This hearing was continued for the purpose of taking the deposition of Gilbert J. Fenix, which was done, and the hearing was completed on August 15, 1961. On March 9, 1962, the Hearing Examiner entered his decision that plaintiff's employment during the period January 1, 1955, through September 30, 1956, was family employment, that plaintiff was not a fully insured person under the Social Security Act, and that plaintiff and his wife had been overpaid benefits in the amount of $5,021.30 for which a recovery for overpayment could not be waived.

On April 26, 1962, plaintiff filed a request for review of the Hearing Examiner's decision with the Appeals Council. On June 25, 1962, the Appeals Council

denied the request for review. Thus, the findings, conclusions, and decision of the Hearing Examiner became a final decision of the defendant subject to review in this Court.

On August 8, 1962, plaintiff filed in this Court a "Petition for Review" alleging error in the finding that plaintiff's employment was family employment. (Civil Action No. 1750). On December 31, 1963, defendant filed a "Motion for Summary Judgment."

On June 22, 1965, this Court entered a "Memorandum Opinion Denying Defendant's Motion For Summary Judgment And Reversing And Remanding Cause". This opinion stated that "[t]here is substantial evidence to support the Hearing Examiner's finding that *between the partners* the partnership was dissolved on February 7, 1955," but noted that the question of notice of the dissolution to the plaintiff was not considered under the proper legal standards. Because the crucial issue in this cause could not be resolved until the question of notice of the dissolution to the plaintiff was answered, the Hearing Examiner's decision which was affirmed by the Appeals Council was reversed and the cause remanded for a rehearing not inconsistent with that opinion.

On April 6, 1966, the Appeals Council remanded the cause to a Hearing Examiner for further proceedings consistent with the order of this Court.

The Hearing Examiner received additional evidence on May 23, 1966, and on September 8, 1966, recommended a decision finding that plaintiff had neither actual nor constructive notice of the termination of the partnership before September 30, 1956; that this lack of notice was "immaterial" (Tr. 728) despite the ruling of this Court; that plaintiff had knowledge of facts sufficient to place him "on notice to make inquiry as to the true nature of ownership" (Tr. 732) of the business; that plaintiff did not make inquiry "and therefore under the law of estoppel may not avail himself of an estoppel to deny the continuing exist-ence of the partnership even in an action against the [partners]" (Tr. 732); that plaintiff was not insured because the required number of quarters of coverage were lacking; that neither plaintiff nor his wife were entitled to old age insurance benefits; and that the recovery of the overpayment to plaintiff and his wife for all months from October 1956 through May 1959, in the amount of $5,021.30, may not be waived and recovery of that amount would not be inequitable, unconscionable, or defeat the purpose of Title II of the Social Security Act.

On September 24, 1966, plaintiff filed his exceptions and objections to the Hearing Examiner's findings of fact and conclusions of law as set forth in the recommended decision and requested the opportunity to appear before the Appeals Council for an oral argument. Oral arguments in this cause were held on December 16, 1966. On March 3, 1967, the decision of the Appeals Council was entered.

The Appeals Council properly decided that the Hearing Examiner had erred in finding against the plaintiff on the ground of the inapplicable legal standard of lack of estoppel. Nevertheless, on the family employment issue the Appeals Council erroneously found that plaintiff had "implied notice" in February 1955 of the dissolution of the partnership. (Tr. 643).

Thereafter, on April 28, 1967, plaintiff filed in this Court a "Petition For Review." On June 29, 1967, defendant filed a motion for summary judgment with suggestions in support thereof, and the plaintiff filed suggestions in opposition to the motion.

*Principal Issue in Dispute*

The principal disputed issue in the decision under review is whether or not there is substantial evidence on the entire record to support the conclusion of the Appeals Council that plaintiff had notice of the dissolution of the partnership known as the St. Regis Mining Company. The Appeals Council did not

reverse the finding of the Hearing Examiner that plaintiff did not have actual or constructive notice of the dissolution of the partnership. It found, however, that the plaintiff in February 1955 had "implied notice" of the dissolution.

*Evidence Before Hearing Examiner and the Appeals Council on Remand*

On remand, the issue was whether plaintiff had notice of the dissolution of the partnership in February 1955, actual or constructive. The fact previously found that plaintiff was in the employ of the partnership prior thereto was not questioned. On the limited issue of notice the substantial, relevant, and material additional evidence was as follows.

Plaintiff testified that it was his son, Gilbert J. Fenix, who had asked him to accept employment at the mine; that he was not told who he was working for or who owned the mine; that he was paid by check with the name St. Regis Mining Company on it; that he knew the mine belonged to his son and Mr. Prigg (Tr. 760); that he "generally" knew that his son owned three-fourths and Prigg owned one-fourth but that he did not know as a fact the ownership arrangement or form; that he thought it was a "plain partnership" (Tr. 774); that he did not know the exact arrangements but knew his son and Prigg were partners in the mine (Tr. 772); and that there was no reason for his knowing the details of the arrangement between his son and Prigg. (Tr. 195, 772).

Plaintiff testified that his son had purchased a note from him for $3,200.00 which had originally been given to him by Russell H. Prigg; that he did not know that his son had used this note as partial consideration for the purchase of mining equipment from Russell H.

Prigg;[1] that he thought his son purchased the note from him prior to February 7, 1955; and that his son never told him what he did with the note. (Tr. 758–759).

Plaintiff testified that he had made a mistake by placing on the application of September 7, 1956, the statement that his son and Mr. Scisson owned the St. Regis mine; that he knew Mr. Prigg to be his son's partner in the mine (Tr. 760); that he knew there had been some conversations concerning the possibility of Scisson acquiring Prigg's interest; that he did not make certain statements[2] alleged to have been made by him to a district office representative on November 6, 1959, which reveal that he knew that Prigg had sold his share to his son in 1955 and that he thought that Scisson was a partner in the mine (Tr. 761); that he did not have "any real personal knowledge of whether Scisson was or wasn't a partner at St. Regis" (Tr. 772); that if he made the statement that his son and Scisson owned the St. Regis mine, he believed they did (Tr. 188); and that he did not know of the bill of sale or the change in ownership which occurred on February 7, 1955, until his benefits were terminated in 1959.

Plaintiff testified that during his employment at the mine he did do some work for a separate corporation called Fenix & Scisson for which he was not paid; that he was always paid for his work with a St. Regis Mining Company check; that he did not think he was being paid for performing work for Fenix & Scisson (Tr. 762); and that he never did think he was working all the time for Fenix & Scisson. (Tr. 766).

Plaintiff testified that he was aware of his son's mining equipment purchases from Prigg during the period of employment by the St. Regis Mining Com-

---

1. Exhibit 18 which was submitted at the original hearing is a copy of a bill of sale of goods to G. J. Fenix by Russell H. Prigg, dated February 7, 1955.

2. The statements referred to hear appear in Exhibit 22 which was submitted at the

original hearing. This exhibit is a "Report of Contact With Claimant", is dated November 6, 1959, and is signed by Dorene Woods, Claims Representative Trainee, District Office, Joplin, Missouri.

pany; that he was of the opinion that these purchases were made a piece at a time and that they were not made all at once; and that his son did not show him a bill of sale for the equipment. (Tr. 765).

Plaintiff stated that during his employment at the mine Prigg "conducted himself in such a way that led me to believe that he was interested and we were looking forward to possible starting of the mine sometime" (Tr. 779); that he and Prigg worked together to repair and maintain the mining properties subsequent to the February 7, 1955, sale date of Prigg's interest to his son; that after the sale date Prigg did not change his conduct with respect to the work he did for the St. Regis mine (Tr. 782); that he considered his son and Prigg to be partners in the mine after the sale date; that neither his son nor Prigg told him that the partnership had been dissolved or that there had been a change in the partnership (Tr. 783); that he personally considered the partnership to be in existence even when his son advanced funds to it (Tr. 842); and that he looked to the St. Regis Mining Company for pay. (Tr. 841).

In the testimony of Mrs. Juanita Manning, who was employed as a secretary by the St. Regis Mining Company, she stated that she was given the company's books after the mine closed; that she was directed by Gilbert Fenix to pay his father (plaintiff herein) when he hired him to work for the company (Tr. 794); that she generally knew that Gilbert Fenix and Russell Prigg were partners (Tr. 802) and that both of them had told her they were partners (Tr. 803); that she did know that all the mine's machinery had been sold to Gilbert Fenix in February of 1955 (Tr. 802); that the letterheads she used for business purposes show on their face the names of Gilbert J. Fenix and Russell H. Prigg as partners in the St. Regis Mining Company (Tr. 803); that Prigg's name was never removed from the stationery after the date of sale; and that she continued to use checks with the name of St. Regis Mining Company printed on them until the close of the book entries in December, 1958. (Tr. 804).

Mrs. Manning also stated that she prepared the company's W-2 withholding tax statement numbered as Exhibit 68 and covering the year 1956 for the employee Frank Fenix, plaintiff (Tr. 806); that the exhibit had the names of G. J. Fenix and R. H. Prigg, Jr., on it, as partners doing business in the name of St. Regis Mining Company (Tr. 807); that she thought that both partners had authority to sign checks on the company's checking account although it was the custom for G. J. Fenix to sign the checks if he was in town (Tr. 807, 808); that to her knowledge the bank account always remained in the company name; that she had no knowledge of the change in membership of the partnership or of its dissolution (Tr. 808); and that she did not know of any checks drawn on the company account which had been signed by Prigg. (Tr. 810).

Russell Prigg testified that he never told plaintiff that there had been a dissolution of the partnership; that he never notified anyone of the dissolution; that he had authority to sign St. Regis Mining Company checks (Tr. 822); that he did not know whether Gilbert Fenix ever paid the plaintiff with a personal check (Tr. 827); and that after the date of sale, St. Regis Mining Company checks continued to be used to pay bills and the payroll. (Tr. 832).

*Recommended Decision of the Hearing Examiner After Remand*

In substance, the recommended findings of the Hearing Examiner on remand were that plaintiff-claimant had neither actual nor constructive notice of the change in ownership which took place on February 7, 1955; that this was immaterial; and that (under the inapplicable estoppel theory) the partners were not estopped to deny continued existence of the partnership. Therefore, the Hearing Examiner concluded that plaintiff and his wife were not entitled to benefits which had been paid for all

months of October 1956 through May 1959, and that an overpayment had resulted which could not be waived.

### Decision of the Appeals Council on Remand

The decision of the Appeals Council was that plaintiff received "implied notice" of the dissolution of the partnership between Gilbert J. Fenix and Russell H. Prigg on or about February 7, 1955. The Appeals Council concluded the following:

"The Appeals Council has noted the various allegations of record that no express notice of dissolution of the partnership was received by the claimant and concedes that express notice has not been shown at any time. However, in the circumstances presented, the Appeals Council must conclude that the record shows the claimant, as an intelligent and reasonably prudent individual who was also greatly experienced in mine operation, would certainly realize from his son's actions, advice and instructions that a significant change had occurred in the ownership of the mine machinery and, by reason thereof, would learn that the partnership was dissolved, or at least would be chargeable with such knowledge. Consequently, he did receive implied "notice" that the partnership was dissolved, and so the earnings resulting from his employment relationship after February 7, 1955, and through September 30, 1956, were from family employment, specifically excepted from coverage by the provisions of section 210(a) of the Social Security Act then in effect. Therefore, he did not have the requisite insured status to receive old-age insurance benefits at any time within the effective life of his applications filed on September 7, 1956, and July 31, 1959. It also follows that the claimant's wife was not entitled to benefits on his record on the basis of her applications filed on January 21, 1957 and July 31, 1959." (Tr. 642).

The Appeals Council decision further stated:

"* * * it is the decision of the Appeals Council that the claimant and his wife were not entitled to the old-age insurance benefits in the amount of $5021.30 received by them on the basis of his application filed on September 7, 1956, and her application filed on January 21, 1957, that recovery of the $5021.30 overpayment would not be 'against equity and good conscience' or 'defeat the purpose of Title II,' and that recovery thereof should be made against accrued benefits pursuant to the provisions of section 204(a) of the Act. It is also the decision of the Appeals Council that the claimant did not have insured status under the applications for benefits filed by him and his wife on July 31, 1959 and hitherto.

"However, it is the decision of the Appeals Council that the claimant and his wife based on their applications filed on December 26, 1962, are entitled to old-age insurance benefits effective with the month of January 1962, pursuant to sections 202(a), (b) and 214, respectively, of the Social Security Act.

"The recommended decision of the hearing examiner, issued on September 8, 1966, is reversed to this extent." (Tr. 644).

### Scope of Judicial Review

Judicial review of a final decision by the defendant is limited in scope. In such review ordinarily not more than seven questions are before the reviewing court.

(1) Were the hearing procedures fair and lawful? Jacobson v. Folsom, (S.D.N.Y.) 158 F.Supp. 281, 284.

(2) Was evidence received on the material factual issues? Fenix v. Celebrezze, (W.D.Mo.) 243 F. Supp. 816 and cases cited therein.

(3) Are the findings of fact supported by substantial evidence? Cel-

ebrezze v. Bolas, (C.A.8) 316 F. 2d 498, 500–501.

(4) Are the findings of fact sufficient to resolve the crucial issues? Hayes v. Celebrezze, (C.A.5) 311 F.2d 648, 654.

(5) Were correct legal standards applied to the facts found in determining the ultimate issues? Ferran v. Flemming, (C.A.5) 293 F.2d 568, 571.

(6) Were all regulations of defendant applied in arriving at a decision lawful and valid as applied in this case? Marion v. Gardner, (C.A. 8) 359 F.2d 175.

(7) In finding the facts does it appear that the claimant was required to sustain no greater burden of proof than proof by a preponderance of the evidence, the usual burden in administrative proceedings? Sec. 7(c) Administrative Procedure Act. Sec. 7(c), Title 5, U.S.C.; Jaffe, Administrative Law: Burden of Proof and Scope of Review, 79 Harvard Law Review 914; Woodby v. Immigration and Naturalization Service, 385 U.S. 276, 87 S.Ct. 483, 17 L.Ed.2d 362 (1966).

See also, Pollard v. Gardner, (W.D.Mo., 1967) 267 F.Supp. 890.

Because the evidence on the material issues has been fully developed and because the answers to questions (3) and (5) above are negative in this case, the decision of the Appeals Council will be reversed without again remanding the cause for a rehearing.

*Opinion*

One of the crucial issues to be determined in this Court's review of the Appeals Council decision is whether or not the Appeals Council applied the appropriate legal standards in determining that the plaintiff-claimant had notice of the dissolution of the partnership.

■ The other crucial issue is whether there is any substantial evidence to support a finding that plaintiff had ac-

tual or constructive notice of dissolution of the partnership at the relevant time. This question must be considered under the rule that the burden of proof (risk of non-persuasion) by a preponderance of the evidence is on the plaintiff. Celebrezze v. Bolas, (C.A.8) 316 F.2d 498.

■ The Appeals Council decision of March 3, 1967, erroneously rejected the Hearing Examiner's finding of September 8, 1966, "that the claimant did not receive actual notice of the dissolution of the partnership." (Tr. 641). The Appeals Council "concedes that express notice has not been shown at any time." (Tr. 642). However, their decision stated the following:

"* * * in the circumstances presented, the Appeals Council must conclude that the record shows the claimant, as an intelligent and reasonably prudent individual who was also greatly experienced in mine operation, would certainly realize from his son's actions, advice and instructions that a significant change had occurred in the ownership of the mine machinery and, by reason thereof, would learn that the partnership was dissolved, or at least would be chargeable with such knowledge. Consequently, he did receive *implied 'notice'* that the partnership was dissolved. * * *" (Tr. 642). (emphasis added)

In making this finding of "implied notice", the Appeals Council applied an incorrect legal standard. Under governing Missouri partnership law, the question was actual notice, or its equivalent, constructive notice. Truck Leasing Corporation v. Swope, (Mo.App.1952) 248 S. W.2d 84; Sec. 358.350 R.S.Mo.1959, V. A.M.S.; see also, 22A Missouri Digest, Partnership, ⊘288 and 290.

In Fenix v. Celebrezze, (W.D.Mo., 1965) 243 F.Supp. 816, this Court affirmed the Hearing Examiner's finding based on substantial evidence that there was a dissolution of the partnership between the partners. In that opinion, it was stated that the legal standards applied to determine the dissolution of a

partnership between the partners could not be used "to determine the termination of the partnership between the partnership and an employee without notice * * * *." Fenix v. Celebrezze, supra, l. c. 823.

With respect to the nature of plaintiff's employment at the St. Regis Mining Company, the original opinion stated the following:

"Plaintiff's employment by the partnership on January 1, 1955, was for an indefinite duration. Contracts of employment for an indefinite duration may be terminated at the will of either party (subject to decisional, contractual or statutory notice provisions). Paisley v. Lucas, 346 Mo. 827, 143 S.W.2d 262; Maxey v. General Electric Company, Mo.App., 382 S.W. 2d 67.

"Because plaintiff was employed by the partnership, he continued to be employed by the partnership until he received actual or constructive notice of the dissolution. The dissolution of a partnership does not abrogate existing contracts to which the partnership is a party. Armstrong v. Henley, 182 Mo.App. 320, 170 S.W. 402; Prater v. Rush, 228 Mo.App. 922, 74 S.W.2d 875. Liability on partnership contracts terminable by notice of dissolution continues until such notice is given. Cf., Truck Leasing Corp. v. Swope, Mo.App., 248 S.W.2d 84." Fenix v. Celebrezze, supra, l. c. 823.

In 40 Am.Jur. Partnership § 262, it is stated:

"To all those who have previously dealt with a partnership, direct notice of dissolution or retirement must be actually given, or the knowledge thereof brought home to them. While the mere possession of the means of knowledge of the withdrawal of a partner is not the equivalent of actual knowledge, and will not always exonerate the retiring members from liability, even though the fact of giving notice may sometimes be implied from circumstances, yet it seems to be sufficient if the party to be charged might by reasonable diligence have learned of the dissolution of the partnership from the means furnished for the purpose of giving notice. All that is required is notice in fact, and it is wholly immaterial by what means that notice is brought home to the knowledge of the patrons, or in what form it is given, for no particular method or formality need be observed. It is enough that the information comes to the patron either directly or through some of the channels which the law recognizes as legitimate ways of communication. The usual method of giving notice of the dissolution of a partnership is by circular letters, addressed to the customers."

■ The legal standard applied by the Appeals Council to determine that the plaintiff had notice of the partnership's dissolution was not the appropriate standard. The appropriate standard is whether or not notice of the dissolution was "brought home to one who [had] dealt with the partnership in the past." Truck Leasing Corp. v. Swope, Mo.App., 248 S.W.2d 84, 85.

■ The method of giving notice of dissolution, if not by express or direct notice, must be "through some of the channels which the law recognizes as legitimate ways of communication." 40 Am.Jur. Partnership § 262, l. c. 311. Under the facts in this case as set forth above, it cannot be said that notice of the dissolution of the partnership was "brought home" to the plaintiff through or by any method recognized by law.

At the time the mining equipment was sold to plaintiff's son, the plaintiff did not know of or see the bill of sale and thought that the sales were being made a piece at a time. Further, there was substantial evidence showing that the letterheads, checks, and W-2 forms used by the St. Regis Mining Company after the dissolution took place on or about February 7, 1955, were the same as the ones used prior to that date.

On the material issue of whether plaintiff had actual or constructive notice of the dissolution of the partnership in February 1955, there is no substantial evidence to support a finding that such notice existed. The finding of the Hearing Examiner on this issue was the only permissible finding on the record. In view of the foregoing, the decision of the Appeals Council must be reversed. Therefore, it is

Ordered that defendant's motion for summary judgment be, and it is hereby, denied. It is further

Ordered and adjudged that the decision of the defendant be, and it is hereby, reversed. There has been no suggestion of defect of parties plaintiff because Jessie P. Fenix, wife of the plaintiff, was not a party. Nevertheless, to make the adjudication binding on all the parties to the controversy, it is further

Ordered that Jessie P. Fenix be, and she is hereby, added as a party plaintiff.